USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___8/8/2023_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
FIANA KWASNIK,                                       :
                                                     :
                                                     :
                                    Plaintiff,       :
                    -against-                         :          22-CV-4767 (VEC)
                                                     :
                                                     :          OPINION & ORDER
OXFORD HEALTH INSURANCE, INC. and                    :
ISLAND PEER REVIEW ORGANIZATION,                     :
INC.,                                                :
                                                     :
                                    Defendants.      :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff brings this action pursuant to Sections 502(a)(1)(B) and 502(c) of the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c),

seeking money damages, declaratory judgment, and injunctive relief against Defendants Oxford

Health Insurance, Inc. ("Oxford") and Island Peer Review Organization, Inc. ("IPRO"). *See*

Am. Compl., Dkt. 46 ("FAC").[1]  On December 16, 2022, Defendants filed separate motions to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Oxford Mot., Dkt. 47; IPRO

Mot., Dkt. 49.  For the following reasons, the motions are GRANTED.

## BACKGROUND[2]

Plaintiff is an insured under a large group medical insurance policy written by Defendant

Oxford, which Plaintiff obtained through her New York employer.  FAC ¶ 18.  In or around

---

[1]      Defendants removed this case from New York State Court.  *See* Not. of Removal, Dkt. 1.  The Court denied Plaintiff's motion to remand and granted Plaintiff leave to amend the complaint.  *See* Order, Dkt. 42.

[2]      The facts are based on the allegations contained in the First Amended Complaint.  The Court accepts all well-pled, non-conclusory factual allegations as true and draws all reasonable inferences in the light most favorable to Plaintiff.  *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

September 2021, Plaintiff's doctor recommended that she undergo a round of IVF treatment, which would involve retrieving and fertilizing eggs as well as thawing and then fertilizing previously-retrieved eggs that Plaintiff had electively cryopreserved in 2017 (a procedure for which she paid out of pocket). *See id.* ¶¶ 36, 42–44.[3]  The resulting embryos created from the thawed eggs (referred to in the FAC as the "2017 Oocytes") and any embryos created after fertilizing the newly-retrieved eggs would then be genetically tested prior to transfer to Plaintiff's uterus. *Id.* ¶ 43; *see also* IPRO Decl. Exs. A–B, Dkt. 53.[4]  Because infertility treatment is a benefit covered by her Oxford plan (the "Plan"), Plaintiff sought pre-authorization from Oxford to receive the recommended treatment.  FAC ¶¶ 1, 3.

In a letter dated September 22, 2021, Oxford denied coverage for Plaintiff's treatment. *Id.* ¶¶ 65, 72.  When Plaintiff's physician requested a clinical reconsideration, Oxford stated that the procedure was not "medically necessary" because Plaintiff had the 2017 Oocytes available to her; Oxford stated that Plaintiff must use the 2017 Oocytes before Oxford would cover another round of egg retrieval. *Id.* ¶¶ 72, 75–76.  On October 18, 2021, Plaintiff sent Oxford a "first-level appeal" referencing New York's IVF Mandate. *Id.* ¶ 77.[5]  In October 2021, Plaintiff underwent an egg retrieval at her own expense. *Id.* ¶¶ 73–74.

On November 2, 2021, Oxford issued a Final Adverse Determination Letter upholding its previous decision to deny Plaintiff's requested infertility treatment. *Id.* ¶ 78.  Plaintiff sent a

---

[3]     Plaintiff was not insured by Oxford when she elected to retrieve and freeze eggs in 2017, nor does she claim that she is entitled to coverage or benefits with respect to the 2017 eggs.  FAC ¶¶ 46–48, 50–54.

[4]     Exhibits A and B, Dkts. 53-1 and 53-2, document IPRO's review of Plaintiff's appeals of Oxford's decision to deny coverage.  IPRO moved to file both exhibits under seal given the discussion of protected health information. *See* Letter, Dkt. 52.  The Court grants the motion.

[5]     Pursuant to the New York Insurance Law, which Plaintiff has dubbed the "IVF Mandate," New York requires large group insurance policies to provide insurance coverage for up to three rounds of in-vitro fertilization ("IVF") to treat infertility. *See* FAC ¶¶ 1–2 (citing N.Y. Ins. Law §§ 3221(k)(6)(c)(vii), 4303(s)(3)(G)).

second-level appeal to Oxford, *id.* ¶ 79;[6] Oxford, in a December 5, 2021, letter, approved limited coverage related to the thawing of the 2017 Oocytes and the transfer of embryos created at Plaintiff's expense in October 2021, but it continued to deny her claim for the October 2021 egg retrieval and genetic testing, *id.* ¶¶ 80, 82.

Plaintiff sought external review of Oxford's denial, which was assigned to Defendant IPRO by the External Appeal Unit of the New York Department of Financial Services ("DFS"). *See id.* ¶¶ 69, 84.[7] In a January 27, 2022 letter, IPRO upheld Oxford's decision that a "fresh round of IVF was not 'medically necessary.'" *Id.* ¶ 92. IPRO issued a second denial letter on February 11, 2022, which Plaintiff alleges included a denial of certain treatment categories that Oxford had previously approved. *Id.* ¶ 101.

On or about May 2, 2022, Plaintiff commenced this action in New York Supreme Court, New York County. *See* Not. of Removal ¶ 1. On June 7, 2022, Defendants jointly removed the case to federal court on the grounds that Plaintiff's claims are preempted by ERISA. *See id.* ¶ 6; Defs. Opp. at 1, Dkt. 27.

After the Court denied Plaintiff's motion to remand, Order, Dkt. 42,[8] Plaintiff filed an amended complaint on November 10, 2022, Dkt. 46. The FAC alleges a violation of §§ 502(a)(1)(B) and 502(c) of ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c); and seeks a

---

[6]     Plaintiff's November 15, 2021, second-level appeal was accompanied by a request to receive "access to and copies of all documents, records and other information relevant to her appeal, as well as copies of any internal rules, guidelines or protocols that Oxford relied on to make its denial decision." FAC ¶ 79. Plaintiff alleges that she never received the materials she requested. *Id.*

[7]     In 2011, the New York State Insurance Department and the New York State Banking Department were consolidated, creating the New York State Department of Financial Services. *See Healthnow N.Y. Inc. v. N.Y.S. Ins. Dep't*, 110 A.D.3d 1216, 1218 (3d Dep't 2013). The Superintendent of DFS assumed the powers and duties formerly held by the Superintendent of Insurance. *See id.* at 1217 n.1. Pursuant to Article 49 of the New York Insurance and Public Health Laws, it is DFS and the Department of Health that certify an agent to be an external reviewer. *See* 11 N.Y.C.R.R. § 410.4.

[8]     On October 7, 2022, the Court denied Plaintiff's motion to remand finding that ERISA entirely preempts Plaintiff's claims. *See* Order, Dkt. 42.

declaratory judgment pursuant to various state statutes as well as monetary damages. *See* FAC ¶¶ 110–26.

On December 16, 2022, Oxford moved to dismiss the portion of Plaintiff's First Cause of Action that alleges a violation of ERISA § 502(c), 29 U.S.C. § 1132(c). *See* Oxford Mem. at 6, Dkt. 48. It did not move to dismiss the portion of Plaintiff's First Cause of Action that seeks money damages for an alleged wrongful denial of benefits under § 502(a)(1)(B). *See id.* n.2. IPRO moved to dismiss the Amended Complaint in its entirety. *See* IPRO Mot. Plaintiff opposed the motions. *See* Pl. IPRO Opp., Dkt. 54; Pl. Oxford Opp., Dkt. 55.

For the following reasons, Defendants' motions to dismiss are GRANTED.

## DISCUSSION

Plaintiff has health insurance from Oxford that she obtained through her employment with Alexander Wang. FAC ¶ 18. The Plan is governed by ERISA and the laws of the State of New York. *Id.* ¶¶ 3, 18. Plaintiff argues that Oxford improperly denied coverage for a new round of IVF treatment[9] and that IPRO wrongfully upheld Oxford's adverse benefit decision. *Id.* ¶¶ 11–12.

Oxford has moved to dismiss Plaintiff's claim that Oxford violated ERISA § 502(c) and her claims for declaratory relief, arguing that Plaintiff fails to state a claim and that her other claims are duplicative of her cause of action for benefits under ERISA (a claim that Oxford has not moved to dismiss). *See* Oxford Mem. at 1–2. IPRO argues that it is statutorily immune from suit and, even if it were not, Plaintiff waived her ability to bring suit against IPRO when she initiated the appeal of Oxford's adverse determination. *See* IPRO Mem. at 5–6, Dkt. 51.

---

[9]     As the Court understand it, Plaintiff's primary dispute is whether it was medically necessary to undergo a new round of egg retrieval, which is just one of a series of steps that constitute a "round of IVF treatment." There seems to be a secondary dispute over whether genetic testing of the embryos created by fertilizing the eggs retrieved in 2017 was medically indicated given Plaintiff's age at the time of that retrieval. That secondary dispute is not a subject of the instant motions to dismiss.

## I.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).  The Court is not required, however, to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although the Court is generally confined to "the four corners of the complaint" and must "look only to the allegations contained therein," *Perez v. Westchester Foreign Autos, Inc.*, 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)), it may consider materials attached to the complaint or incorporated by reference, documents in Plaintiff's possession or of which Plaintiff had knowledge and relied on in bringing suit, as well as matters appropriate for judicial notice, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

## II.     Oxford's Motion to Dismiss Is Granted

Plaintiff's First Cause of Action alleges, *inter alia*, that Oxford violated Section 502(c) of ERISA, *see* FAC ¶ 111; her Second Cause of Action seeks a declaratory judgment that Oxford cannot consider Plaintiff's 2017 Oocytes when making a medical necessity determination, *see id.* ¶¶ 118–20.  Oxford has moved to dismiss both causes of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Oxford Mem. at 1–2.

### A.       Oxford's Motion to Dismiss Plaintiff's § 502(c) Claim Is Granted

Plaintiff alleges that Oxford violated Section 502(c) of ERISA by "[f]ailing and/or refusing to provide the requested information sought by Plaintiff in her November 15, 2021 letter." FAC ¶ 111(e).  Specifically, Plaintiff alleges that she requested but did not receive "access to and copies of all documents, records and other information relevant to her appeal, as well as copies of any internal rules, guidelines or protocols that Oxford relied on to make its denial decision," and "an explanation of the scientific or clinical judgment that Oxford relied upon to make its benefits decision, including its diagnosis or treatment code and corresponding meanings." *Id.* ¶ 79.  Oxford argues that Plaintiff cannot maintain her cause of action under § 502(c) because that section applies only to plan administrators, and Oxford is, by definition, not a plan administrator.  *See* Oxford Mem. at 6–7.

Under ERISA, a plan administrator, or alternatively, the plan sponsor, must provide, upon a participant's request, "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 502(c), codified at 29 U.S.C. § 1132(c), provides, in relevant part, that "[a]ny administrator" of an ERISA-covered health plan that "fails or refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant . . . within 30 days after such request may in the court's discretion be personally liable to such participant" in an amount of "up to $100 a day from the date of such failure or refusal." *Id.* § 1132(c)(1)(B);[10] *Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 128 (2d Cir. 2017).

---

[10]       The maximum statutory damage amount has been increased by regulation to $110 per day.  *See* Adjustment of Civil Penalties Under ERISA Title I, 29 C.F.R. § 2575.502c-1 (2023); *see also Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 128 n.2 (2d Cir. 2017).

ERISA defines "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated;" if, however, "an administrator is not so designated," then the "plan sponsor"[11] or "such other person as the Secretary may by regulation prescribe" shall be deemed the plan administrator.  29 U.S.C. § 1002(16)(A).

Plaintiff argues that Oxford "has chosen to act as the plan administrator" by denying her claim for benefits and, in the denial letter, by informing Plaintiff of her right to "receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information relevant to the request and an explanation of the scientific basis or [c]linical judgment [Oxford] relied upon" in denying her claim.  Pl. Oxford Opp. ¶ 2.  Plaintiff argues that because such "documents could reasonably include Summary Plan Descriptions and other documents required to be furnished" under the statute, Oxford can be held statutorily liable for failing to provide such documents.  *See id.*  Plaintiff further argues that an insurance company "should be treated as" a plan administrator when it "decid[es] whether or not to grant benefits under an employee benefit plan and provide[s] notices regarding ERISA rights."  *Id.* ¶ 3 (citing *Sheehan v. Metro. Life Ins. Co.*, 2002 WL 1424592 (S.D.N.Y. June 28, 2002)).  Alternatively, Plaintiff claims that whether Oxford is a plan administrator constitutes a question of fact not suitable for decision on a motion to dismiss.  *Id.*  The Court disagrees.

The Court need not address whether Oxford in fact provided or refused to provide any documents required to be furnished under § 502(c) because Oxford is not a plan administrator under ERISA.  As an initial matter, Oxford has provided the Court a copy of the Plan, which the

---

[11]     "The term 'plan sponsor' means (i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan, or (iv) in the case of a pooled employer plan, the pooled plan provider."  29 U.S.C. § 1002(16)(B).

Court may consider on a motion to dismiss;[12] it clearly rebuts Plaintiff's contention that Oxford is the plan administrator. *See* Stalinski Decl. Ex. A at 4, Dkt. 26-1[13] (Group Policy cover page stating that Oxford is "not an employer or plan administrator for any purpose with respect to the administration or provision of benefits under the [Plan]," and that it is "not responsible for fulfilling any duties or obligations of an employer or plan administrator"); *id.* at 119–20 ("The 'plan administrator' is the Group" — i.e., Alexander Wang, *see id.* at 12 — "or a third party appointed by the Group.  [Oxford is] not the ERISA plan administrator.").  Plaintiff has not disputed the Plan's validity, its authenticity, or the cited language.  Because statutory penalties are reserved for plan administrators, 29 U.S.C. § 1132(c)(1), and the Plan plainly states that Oxford is not the plan administrator, *see* Stalinski Decl. Ex. A, Oxford cannot be liable pursuant to § 502(c) for failure to furnish documents.

Moreover, *Sheehan* does not stand for the proposition that an insurance company can become an ERISA plan administrator simply by communicating adverse coverage determinations to a plan participant, the plan participant's rights under ERISA, or by determining whether to grant coverage *vel non*; Plaintiff provides no case law to support that assertion. *Sheehan* merely articulated settled Second Circuit law that a plan administrator may be a

---

[12]     Courts routinely consider plan documents for purposes of deciding a motion to dismiss in ERISA cases because the plan itself is generally integral to and incorporated by reference in the Complaint, as it was here.  *See Guzman v. Bldg. Serv. 32BJ Pension Fund*, 2023 WL 2526093, at *8 (S.D.N.Y. Mar. 15, 2023) (collecting cases); FAC ¶¶ 1–4 (referencing the Certificate of Insurance with Oxford ("COI"), i.e., the Plan).

[13]     Because the Plan document is attached as a single Exhibit and includes separate, consecutively paginated documents therein, page numbers to the Plan in Ex. A are to the relevant page of the entire PDF.

properly-named defendant in an ERISA suit to recover plan benefits.[14]  Moreover, as Oxford

correctly points out, *Sheehan* "did not concern a claim for statutory penalties under ERISA §

502(c)" and is, therefore, inapplicable here.  *See* Oxford Reply at 5, Dkt. 57.  Plaintiff cites no

authority for the proposition that informing Plaintiff of her right to receive certain documents,

whether those documents are required to be provided by a plan administrator or not, amounts to

"acting as" the plan administrator in such a way as to lead to liability under § 502(c).

Equally unavailing is Plaintiff's claim that it is a question of fact whether Oxford acted as

the plan administrator for purposes of § 502(c) liability.  *See* Pl. Oxford Opp. ¶ 3 (citing *Mbody*

*Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*, 2016 WL 4382709 (S.D.N.Y.

Aug. 16, 2016)).  The court in *Mbody* declined to decide on a motion to dismiss whether the

defendant was a plan administrator subject to § 502(c) because the plaintiff alleged adequately

that the defendant had "control and discretion over the plan assets," which the defendant failed to

rebut.  2016 WL 4382709, at *9 n.15.[15]  By contrast, Plaintiff did not allege that Oxford was the

plan administrator, nor that Oxford exercised control over plan assets.  It was not until Plaintiff's

opposition to Oxford's motion to dismiss that she raised the argument that "Oxford was the plan

administrator . . . based on its control and discretion over the plan."  Pl. Oxford Opp. ¶ 3.  But

---

[14]     Plaintiff likely is focused on a single sentence in *Sheehan* in which the court, when finding that a suit under § 502(a)(1) of ERISA may be brought against a plan administrator or the plan itself, stated: "If an insurance company controls the distribution of funds and decides whether or not to grant benefits under an employee benefit plan, then it can be sued as a plan administrator."  *Sheehan*, 2002 WL 1424592, at *23.  That sentence, however, relies on *Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 509 (2d Cir. 2002), in which the Second Circuit made clear that the plan administrator or the plan itself may be a proper defendant in an ERISA suit for benefits.  *See id.* (stating that the Second Circuit, in several prior opinions, has "indicated that a plan is a proper defendant in an action to recover benefits under [ERISA]," and that plan administrators, when they are administering the plan and controlling the distribution of funds from the plan's assets, may be sued in addition to an ERISA plan for claimed benefits).  Neither *Chapman* nor *Sheehan* goes so far as to suggest that an insurance company becomes a plan administrator merely by making coverage determinations.

[15]     Although the defendant in *Mbody* attached documentation to its motion to dismiss in an effort to rebut the allegation that it had control over plan assets, the court found that such documentation was extrinsic to the complaint and therefore inappropriate for it to consider on a 12(b)(6) motion.  *Mbody*, 2016 WL 4382709, at *9 n.15.

"[i]t is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." *Red Fort Cap., Inc. v. Guardhouse Prods., LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019). Thus, even assuming that Oxford failed to provide Plaintiff "access to and copies of all documents, records, and other information relevant to her appeal," FAC ¶ 79, Plaintiff has failed to allege adequately that Oxford is the plan administrator such that it has potential liability pursuant to § 502(c) for its failure to provide the requested documents. *See generally* FAC; *see also* Oxford Reply at 5–6.[16]

Finally, Plaintiff does not even argue — let alone allege — that the documents she requested from Oxford are the kinds of documents that ERISA requires a plan administrator to provide. *See* Oxford Reply at 3. Plaintiff merely speculates that the documents Oxford referenced in its denial letters, *i.e.*, "all documents, records and other information relevant to the request," including a "copy of the internal rule, guideline or protocol, if any, that [Oxford] relied upon in making the non-coverage decision," are "documents [that] could reasonably include Summary Plan Descriptions and other documents required to be furnished under 29 U.S.C. §[§] 1024(b)(1) & (b)(4)." Pl. Oxford Opp ¶ 2. Plaintiff's speculation, which appears only in her response to the motion to dismiss and not in the Amended Complaint, is not a plausible allegation. Without more, the Court is left to conclude that Plaintiff has not and cannot allege adequately that Oxford is a plan administrator subject to § 502(c) liability, let alone that Oxford failed to provide her copies of ERISA-mandated documentation.

In short, Plaintiff has failed to allege a cause of action pursuant to § 502(c) against Oxford. That aspect of Count One of the Amended Complaint is, therefore, dismissed.

---

[16]   For Oxford's part, Oxford claims, and Plaintiff does not dispute, that Oxford has provided Plaintiff the documentation she requested, albeit after this litigation was commenced. Oxford Mem. at 6 n.3.

**B.      Oxford's Motion to Dismiss Plaintiff's Second Cause of Action for Declaratory Judgment Is Granted**

Plaintiff's Second Cause of Action seeks a declaratory judgment pursuant to N.Y. C.P.L.R. § 3001 that "the use or non-use of Plaintiff's 2017 Oocytes cannot be a basis for a medical necessity determination" by Oxford.  FAC ¶¶ 118–20.  Oxford's motion to dismiss this claim is granted.

As an initial matter, Plaintiff's Amended Complaint improperly seeks relief pursuant to N.Y. C.P.L.R. § 3001, a state procedural remedy that is outside this Court's purview to grant. *See Gustavia Home, LLC v. Rutty*, 2018 WL 2198742, at *5 (E.D.N.Y. May 14, 2018), *aff'd*, 785 F. App'x 11 (2d Cir. 2019); *see also Young Men's Christian Ass'n of Greater Rochester v. Town of Milo*, 563 F. Supp. 3d 71, 79 n.3 (W.D.N.Y. 2021).  Plaintiff asks the Court, however, to take "judicial notice that Plaintiff's reference to C.P.L.R. § 3001 was a courtesy heading only," and that Plaintiff's request for declaratory relief should instead be construed as a request pursuant to 28 U.S.C. §§ 2201 or 2202.  Pl. Oxford Opp. ¶ 5.  The Court would have been disinclined to dismiss a cause of action on purely technical grounds, but even if Plaintiff had properly cited federal law as the basis for the declaratory relief sought in her Amended Complaint, her claim for declaratory judgment would be dismissed because it is duplicative of her First Cause of Action for benefits.

Plaintiff challenges the denial of coverage for a new round of IVF premised on the existence of the 2017 Oocytes; she seeks a "[d]eclaration that Oxford violated Plaintiff's rights under the terms of the [Plan] by failing to pay Plaintiff's medical benefits," FAC at 16 ("Prayer for Relief" section), and a judgment "ordering that Oxford pay to Plaintiff all applicable medical benefits to which she is entitled plus interest," *id.* at 17; *see also id.* ¶¶ 110–17.  A declaratory judgment stating that Oxford was wrong to deny such coverage is, in essence, identical to and

thus impermissibly duplicative of her claim for benefits.  *See, e.g.*, *Walker v. Prudential Ins. Co. of Am.*, 2020 WL 978515, at *4 (S.D.N.Y. Feb. 28, 2020) ("[T]he claim for declaratory judgment[] seeks a declaration that the life insurance policy was in effect at the time of [the insurance event] and that Plaintiff is entitled to the [] death benefit.  A declaratory judgment claim is not appropriate where it is merely duplicative of a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and can be adequately redressed with money damages.").

Plaintiff also asks the Court to order Oxford to "disclose any financial relationship between Oxford and any private company purporting to conduct an external appeal."  Pl. Oxford Opp. ¶ 6; FAC at 17.  Plaintiff argues that state insurance regulations, which provide insureds with an avenue for independent review of adverse benefit decisions, *see* N.Y.C.R.R. § 410.11(e)(1),[17] enable "a biased review that benefits both IPRO and Oxford;" Plaintiff asserts that "the fact that neither Oxford nor IPRO mentioned the IVF Mandate in their reviews" is proof positive of her theory.  Pl. Oxford Opp. ¶ 6.  Plaintiff's complaint that the review process was biased and her unsupported suggestion that Oxford and IPRO colluded wrongfully to deny her coverage is again, at its heart, a complaint that she was improperly denied benefits coverage.

---

[17]    As will be more fully discussed below, Rule 410.11(e)(1) provides:

> Upon requesting an external appeal, the insured, the insured's designee or the insured's health care provider shall acknowledge that the determination of the external appeal is binding on the plan and the insured, and shall agree not to commence any legal proceeding against an external appeal agent or clinical peer reviewer to review a determination made by such external appeal agent or clinical peer reviewer pursuant to article 49 of the Insurance Law or article 49 of the Public Health Law; provided, however, that the foregoing shall not limit any rights the insured, the insured's designee or the insured's health care provider may have with respect to bringing an action for damages for bad faith or gross negligence or with respect to bringing an action against the insured's health care plan.

N.Y. Comp. Codes R. & Regs. tit. 11, § 410.11(e)(1).

Because her request for disclosure is essentially duplicative of her first cause of action, it is dismissed.[18]

In short, Oxford's motion to dismiss Plaintiff's Second Cause of Action for declaratory relief is granted.[19]

## III.    IPRO's Motion to Dismiss Is Granted

Plaintiff challenges IPRO's decision to uphold Oxford's denial of benefits pursuant to N.Y. C.P.L.R. Article 78;[20] she seeks a declaratory judgment (1) that IPRO's determination was made without any legal basis, s*ee* FAC ¶¶ 121–23; and (2) that IPRO's argument that it is statutorily immune from suit is null and void, *id.* ¶¶ 124–26.[21]  Each of Plaintiff's claims against IPRO fails.

### A.    IPRO's Motion to Dismiss Plaintiff's Fourth Cause of Action Is Granted

Article 49 of the New York Insurance Law "establish[es] an insured's right to an external appeal of a final adverse determination by a health plan," N.Y. Ins. L. § 4910(a), and provides

---

[18]    Even if it were not duplicative, Plaintiff fails to cite any legal basis for granting such a remedy, let alone that it would do anything to redress her injury.

[19]    In the event this Court were to construe Plaintiff's Amended Complaint as including a claim for equitable relief pursuant to Section 502(a)(3) of ERISA, Oxford moves to dismiss it.  *See* Oxford Mem. at 10–12.  Although "ERISA § 502(a)(3) provides for 'appropriate equitable relief' to redress ERISA violations," *Demopoulos v. Anchor Tank Lines, LLC*, 117 F. Supp. 3d 499, 512–13 (S.D.N.Y. 2015) (quoting 29 U.S.C. § 1132(a)(3)), a Section 502(a)(3) claim may only survive a motion to dismiss when a plaintiff establishes an underlying violation of the statute, *see Gates v. United Health Grp. Inc.*, 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012).  Plaintiff argues that she "is entitled to maintain her cause of action pursuant to ERISA § 502(a)(3)" because "Oxford breached its fiduciary duties of loyalty and due care amounting to unjust enrichment at Plaintiff's expense by: 1) failing to consider or apply the IVF Mandate; 2) relying on unqualified reviewers of Plaintiff's file in the course of her appeals; and 3) only providing information related to its adverse determination in response to this litigation."  Pl. Oxford Opp. ¶ 7.  The problem with Plaintiff's argument is that she never raised a § 502(a)(3) claim in her Amended Complaint.  *See generally* FAC.  Accordingly, Oxford's motion with respect to this claim is denied as moot.

[20]    An Article 78 petition is a mechanism in New York by which a party may seek judicial review of certain state legislative or administrative actions.  *See* N.Y. C.P.L.R. §§ 7801–04; *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005).

[21]    Plaintiff again cites to New York statutes rather than federal statutes as the basis for her requested declaratory relief.  *See* FAC ¶¶ 124–26 (citing N.Y. C.P.L.R. § 3001).  IPRO has not, however, raised that as a basis for granting its motion to dismiss.

that the "superintendent [of DFS] shall establish procedures by regulation to randomly assign an external appeal agent to conduct an external appeal," *id.* § 4914(a).  Pursuant to Article 49, "[n]o external appeal agent or clinical peer reviewer conducting an external appeal shall be liable in damages to any person for any opinions rendered by such external appeal agent or clinical peer reviewer upon completion of an external appeal conducted pursuant to this section, unless such opinion was rendered in bad faith or involved gross negligence."  *Id.* § 4914(c).

In 2008, the superintendent of DFS promulgated Rule 410.11(e)(1), pursuant to which an insured who "request[s] an external appeal" of an adverse benefit determination "shall agree not to commence any legal proceeding against an external appeal agent" except for actions "for damages for bad faith or gross negligence."  N.Y.C.R.R. § 410.11(e)(1).[22]  Rule 410.11(e)(2) mirrors the language in section 4914(c) of the New York Insurance Law; it provides that:

> [N]o external appeal agent or clinical peer reviewer conducting an external appeal shall be liable in damages to any person for any opinions rendered by such external appeal agent or clinical peer reviewer upon completion of an external appeal conducted pursuant to Article 49 of the Insurance Law or Article 49 of the Public Health Law, unless such opinion was rendered in bad faith or involved gross negligence.

N.Y.C.R.R. § 410.11(e)(2).  As written, the statutory and regulatory framework operate to shield IPRO from any suit unless it was grossly negligent or acted in bad faith.

Plaintiff does not dispute that IPRO is an external review agent for purposes of Article 49, nor that "the New York Legislature intended that external review agencies, such as IPRO, be immune from damages."  Pl. IPRO Opp. ¶ 7.  Plaintiff also concedes that she "is not asserting gross negligence or bad faith."  *Id.* ¶ 16.  Rather, Plaintiff argues that Rule 410.11(e)(1) should

---

[22] Prior to this rule, New York courts had permitted Article 78 suits against external appeal agents like IPRO because they "function in an administrative capacity on behalf of the state."  *Vellios v. Serio*, 764 N.Y.S.2d 568, 569–70 (N.Y. Sup. Ct. 2003).  Thus, prior to promulgation of the rule, IPRO, as a not-for-profit corporation, came "within the definition of a 'body' against whom an Article 78 proceeding will lie."  *Id.* at 570 (citing *Schiffer v. Tarrytown Boat Club, Inc.*, 631 A.D.2d 704 (2d Dep't 1995)).

be "voided and annulled in violation of State law."  FAC ¶ 126.  Plaintiff argues that, because the

statutory text of § 4914(c) of the New York Insurance Law only references actions for damages,

under the doctrine of *expressio unius*, the legislature must have intended to permit actions for

declaratory relief against external review agents.  *See* Pl. IPRO Opp. ¶¶ 7, 15.  Thus, by

promulgating regulations that require an insured to agree not to bring "any legal proceeding"

against an external reviewer (except "for damages for bad faith or gross negligence or with

respect to bringing an action against the insured's health care plan"), N.Y.C.R.R. § 410.11(e)(1),

DFS exceeded the scope of its authority, *see* Pl. IPRO Opp. ¶¶ 8–14.  And, because the

regulation "was promulgated in excess of statutory authority," *id.* ¶¶ 3, 8–11, the regulation is

invalid under Article 78 and IPRO is not immune from suit.

In this regard, Plaintiff raises a novel argument that no New York court has squarely

considered: whether the Rule constitutes an abuse of DFS's authority by prohibiting an insured

from bringing any lawsuit of any kind against an external review agency (absent bad faith or

gross negligence), when the statutory text of the external appeal process in Article 49 only

precludes suits for damages.  *See* Pl. IPRO Opp. ¶ 7 ("Plaintiff has not asked for damages from

IPRO . . . but rather relief pursuant to [Article 78] which is declaratory in nature. . . . [N]othing

in [] § 4910 . . . requires a waiver of the right to bring an equity action.").  The problem,

however, is that Plaintiff's requested relief, as she appears to acknowledge, must come from

DFS, not from IPRO.  *See id.* ¶ 4 ("The New York State Department of Financial Services does

not have a basis to overrule New York constitutional law by prohibiting any suit against

IPRO.").  The relief Plaintiff seeks, a declaration that the regulation is null and void, would only

be available in a lawsuit against DFS, the regulatory body that promulgated the purportedly

unconstitutional regulation.  *Cf. Sullivan v. N.Y.S. Unified Court Sys.*, 2016 WL 3406124, at *7

(S.D.N.Y. June 17, 2016) (holding that the Chief Judge and Chief Administrative Judge of the

Courts of New York State were proper defendants in a constitutional challenge to state procedural rules because they "promulgate regulations concerning service of process" and thus had a "particular responsibility over the challenged laws") (cleaned up)).  Accordingly, Plaintiff's claim for declaratory judgment that IPRO's argument that it is statutorily immune from suit is null and void, FAC ¶¶ 124–26, is dismissed.[23]

**B.      IPRO's Motion to Dismiss Plaintiff's Third Cause of Action Is Granted**

Because the question of whether Rule 410.10(e) is a valid exercise of DFS's authority is not properly before it, the Court must interpret the plain language of Article 49 of the New York Insurance Law and the relevant regulatory framework to determine whether IPRO is, as it claims to be, immune from suit.  *See* IPRO Mem. at 10–14.  The Court agrees that it is.

As discussed previously, Article 49 of the New York Insurance Law limits external review agents' liability to damages for bad faith or gross negligence.  *See* N.Y. Ins. L. § 4914(c).  And, as set forth in Rule 410.11(e)(1), when Plaintiff sought an external review, she waived her right to bring a legal proceeding against the external review agent.  *See* IPRO Mem. at 14; *see also* IPRO Decl. Ex. C, Dkt. 50-3.

Plaintiff argues that such a waiver could not have possibly been the legislature's intent when it implemented the external appeal process, *see* Pl. IPRO Opp. ¶ 7, but she fails to point to any case law or other authority to support that argument.  By contrast, the history of the

---

[23]      The Court is cognizant of the implication that, had the proper defendant been named, this Court would have had occasion to decide whether, notwithstanding Article 78's plain language limiting jurisdiction over such claims to New York Supreme Court and the number of cases holding that an Article 78 proceeding is not a civil action, it had jurisdiction to decide the Article 78 claim.  *See Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 155 (2d Cir. 2013) ("We need not decide, however, whether Article 78 can, on its own, deprive a federal court of jurisdiction over claims brought under that provision, as some district courts have held."); *Garofalo v. City of New York*, 2023 WL 3792514, at *5 (S.D.N.Y. June 2, 2023) (collecting cases).  This Court might have been inclined under the circumstances of this case to hold that there is jurisdiction: Plaintiff brought her case in New York State Court,  Defendants removed it, and Plaintiff lost her motion to remand due to ERISA preemption.  *See* Order, Dkt. 42.  Given those circumstances, the Court could see a world in which it might be appropriate to adjudicate her Article 78 petition under the Court's supplemental jurisdiction.  *See, e.g.*, *Casale v. Metro. Transp. Auth.*, 2005 WL 3466405, at *5–6 (S.D.N.Y. Dec. 19, 2005).

promulgation of Rule 410.11 is persuasive evidence that the opposite is true.  The Legislature

charged the Superintendent of the Insurance Department with promulgating rules to implement

the external appeal program.  *See* N.Y. Ins. L. § 301.  In proposing to amend Rule 410 almost 15

years ago, the Superintendent made clear his understanding that the external appeal legislation

set forth in Article 49 of the New York Insurance Law "never intended that external appeal

agents would have to defend their decisions in court proceedings," because "[a]n external appeal

agent does not have a particular interest to protect by defending its decisions, nor is the external

appeal agent the appropriate party to determine how the insured's contract with the health plan,

the Insurance Law, or the Public Health Law should be interpreted in a court proceeding."  30

N.Y. Reg. 35 (Aug. 27, 2008).  The Superintendent further noted that the external review law

"neither permits nor contemplates that external appeal agents would otherwise be subject to court

proceedings to defend their determinations" unless the reviewer's opinion "is rendered in bad

faith or involved gross negligence."  *Id.* § 2.  Since the Rule's promulgation in 2008, the

Legislature has not stepped in to change the law or otherwise to challenge the Superintendent's

understanding of the Legislature's desire to shield external appeal agents from suit (other than

for bad faith or gross negligence).

The Department's reading of the Insurance Law makes sense because "regardless of what

a court decides with respect to the external appeal agent's decision, an insured will still have to

file a lawsuit against his or her health plan in order to compel the health plan to pay for the health

care service." *Id.* § 3.[24]   The Court is bound by the Rule's plain text.  *See Gen. Elec. Cap. Corp.*,

2 N.Y.3d 249, 254 (2004) ("[W]here an agency adopts a regulation that is consistent with its

enabling legislation and is not 'so lacking in reason for its promulgation that it is essentially

arbitrary,' the rule has the force and effect of law." (internal citations omitted)).   The Court is

further persuaded by the fact that at least one other court in New York similarly held that IPRO

was statutorily immune from suit (without deciding whether the statute was, on its face, valid

under Article 78).  *See* IPRO Decl. Ex. E at 5–7, Dkt. 50-5 (unpublished opinion in *Meyer v.*

*N.Y.S. Off. Fin. Servs.*, Index No. 5946-19 (Albany Sup. Ct. Nov. 4, 2020), holding that "the

instant article 78 proceeding[] against IP[R]O, alleging its determination was arbitrary and

capricious or otherwise contrary to law, should be barred").[25]

In short, because Plaintiff waived any right to bring a lawsuit against IPRO in connection

with its review of Oxford's denial of coverage, her claim against IPRO is dismissed.

## IV.   CONCLUSION

For the foregoing reasons, both Defendants' Motions to Dismiss are GRANTED, and

IPRO is dismissed as a party in this case.

---

[24]       The proposed rulemaking further stated that the regulation "does not impact any remedy an insured may
have with respect to . . . the Departments' oversight of the external appeal program;" it "merely provides that upon
requesting an external appeal, the insured shall acknowledge that the determination of the external appeal is binding
on the plan and the insured, and shall agree not to commence any legal proceeding against an external appeal agent
or clinical peer reviewer . . . other than an action for damages pursuant to Article 49 of the Insurance law."  30 N.Y.
Reg. 35 § 3 (Aug. 27, 2008).  The Court is likewise persuaded that the decision to shield external review agents from
litigation absent alleged misconduct in reaching its determination "minimize[s] the costs of health insurance and
protect[s] the interests of consumers who purchase health insurance" while "ensur[ing] the continued viability of the
external appeal program, an important consumer protection."  *Id.* § 4.  Permitting judicial review of any decision
made by an external appeal agency has the glaring potential to drive up costs for consumers whose healthcare
providers or health care plans foot the bill for each appeal.  *See id.* § 3; *see also* N.Y. Ins. L. § 4914(d).

[25]       The *Meyer* court was not asked to consider whether DFS acted within its statutory authority by adopting
regulations immunizing external agents like IPRO from suit (other than for bad faith or gross negligence); rather,
Meyer's action sought to overturn IPRO's decision to uphold an adverse medical necessity determination, a case in
which DFS was not a proper party because it "has no authority to reverse or modify the final decision made by the
external appeal agent."  *Meyer*, Index No. 5946-19, at 4–5.

By no later than **August 18, 2023**, Oxford and Plaintiff must meet and confer and update the Court on next steps with respect to Plaintiff's remaining claim for benefits under ERISA.

The Clerk of Court is respectfully directed to close the open motions at docket entries 47, 49, and 52.  The Clerk of Court is further directed to amend the case caption to reflect IPRO's dismissal from this case.


**SO ORDERED.**

**Date:   August 8, 2023**
        **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**